# IN THE COURT OF APPEALS OF IOWA

No. 20-1334
Filed December 16, 2020

**IN THE INTEREST OF K.P.,**
**Minor Child,**

**M.P., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Webster County, Kurt J. Stoebe, Judge.

A father appeals the termination of his parental rights to his child. **AFFIRMED.**

Douglas Cook of Cook Law Firm, Jewell, for appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Jessica Morton of Bruner, Bruner, Reinhart & Morton LLP, Carroll, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

A father appeals the termination of his parental rights to his child. He challenges the proof of the grounds for termination and that termination is in the child's best interests. He asks for additional time to have the child placed in his custody. We review his claims de novo. *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

The family[1] came to the attention of the Iowa Department of Human Services (DHS) in 2018 because the child tested positive for drugs at birth. The juvenile court removed the child from the parents and adjudicated him to be a child in need of assistance (CINA) based on the mother's substance-use issues. The mother consented to termination of her parental rights in November 2019. The court extended permanency for a period of six months to allow reunification efforts between the child and the father to continue.

Since November 2019, the DHS workers noted that the father seemed resistant to the services offered to him, failing to complete a safe care curriculum and missing a number of visits with the child. But the father was receiving unsupervised overnight visits with the child, and they believed things were going well overall. That changed in July 2020, when the DHS learned the father had secretly been allowing the mother to have contact with the child. The father did not admit he allowed the mother contact until confronted with evidence, at which point he "said that he has made it clear that he will never keep [the child] away from [the mother]."

---

[1] The father is married to the mother but is not the biological father of the child. The biological father has never been identified.

A termination hearing was held in September 2020. The guardian ad litem recommended termination, noting the father "has never exhibited more than a subpar interest in complying with DHS recommendations and, overall, in being a parent to his son." The guardian ad litem also noted that the father "has not shown diligent attention to [the child]'s medical appointments" despite a medical condition that puts the child at a greater risk of high-grade fevers. What the guardian ad litem found most troubling "is that [the father] does seem to understand what is in [the child]'s best interest and yet has attempted to hide contravening behaviors from DHS," such as allowing the mother contact with the child.

The juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(h) (2019). The juvenile court may terminate parental rights under this section if the child is three years of age or younger, has been adjudicated to be a CINA, and has been removed from the parent's physical custody for at least six of the last twelve months. *See* Iowa Code § 232.116(1)(h)(1)-(3). The court must also find the child would be exposed to adjudicatory harm if returned to the parent's care at the time of the termination. *See id.* § 232.116(1)(h)(4) (requiring "clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102"); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" to mean to mean "at the time of the termination hearing"); *In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016) (noting a child cannot be returned to the custody of the parent if doing so would expose the child to any harm amounting to a new CINA adjudication).

4

Clear and convincing evidence supports termination under section 232.116(1)(h). At the termination hearing, the father testified that he is ready and able to support the child financially and can make arrangements for someone to care for the child while he is at work. But the juvenile court noted a number of other issues with returning the child to the father's care:

> The cleanliness of the home is a great concern. There is no evidence that [the father] can properly address K.H.P.'s medical issues. There is no doubt that [he] will continue to allow [the mother] to have access to K.H.P. This is despite the fact that she has been a danger to K.H.P. since his birth.

Although the father testified he would not allow the mother to have any contact with the child, the juvenile court did not find this testimony credible:

> He often contradicted himself when describing the frequency of [the mother]'s contact with [the child]. He adamantly advocated his intention to permit [the mother] and [the child] to be together. At times, he blamed [the child] for insisting on the contact. At other times, he championed [the mother]'s right as a mother to be with [the child]. He expressed little remorse for lying to DHS or violating his contract of expectations.

Because returning the child to the father's care would place the child at risk of adjudicatory harm, we find the requirements to terminate the father's parental rights under section 232.116(1)(h) have been met.

The father challenges the reasonable efforts made to reunify him with the child "by severely restricting visitation after July 15, 2020." Although the DHS must "make every reasonable effort to return the child to the child's home as quickly as possible," these efforts must be "consistent with the best interests of the child." Iowa Code § 232.102(7). Visitation was curtailed because the father allowed the mother contact with the child, which raised safety concerns. Regardless, the reasonable-efforts requirement "is not viewed as a strict substantive requirement

of termination" but "impacts the burden of proving those elements of termination which require reunification efforts." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The evidence clearly shows the child could not be returned to the father's care at the time of termination. Additional visitation would not have changed the outcome.

Once the grounds for termination of parental rights have been established, the court must then "apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights." *D.W.*, 791 N.W.2d at 706-07. In determining best interests, our primary considerations are "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (quoting Iowa Code § 232.116(2)). The "defining elements" we consider in making this determination are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

We agree that terminating the father's parental rights is in the child's best interests. The child has been in foster care since birth. In the two years that have followed, the father has made the bare minimum effort to gain custody. There has never been a trial placement, and at the time of the termination hearing, the father's visits were fully supervised based on safety concerns. Children are not equipped with pause buttons, and delaying permanency in favor of a parent is contrary to the child's best interests. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (noting children must not be deprived permanency on the hope that someday the parent will be able to provide a stable home); *In re A.C.*, 415 N.W.2d 609, 614 (Iowa

1987). The child is doing well in the care of his foster parents, who are willing to adopt him, thereby providing the permanency the child needs.

The father asks for additional time. Iowa Code section 232.104(2)(b) allows the court to continue the child's placement for another six months if doing so will eliminate the need for the child's removal. The juvenile court found that delaying permanency is unwarranted:

> [The father] will not make the sacrifices necessary to protect [the child], parent him, provide a safe home for home, ensure that his health episodes will be treated properly or provide for his well-being. He fails to carry through on the most basic steps; attending medical appointments, visitation, classes or compliance with the contract of expectations. His violations of the trust of DHS and this court after 23 months require the closure of this case, the termination of parental rights and the adoption of [the child] into the family which loves, protects and nurtures him. The additional six months which [the father] proposes will accomplish nothing positive. It will only delay the inevitable termination of parental rights.

The father was already granted one extension of time and failed to make the necessary improvements in the nine months that followed. We agree that the evidence does not support further delaying permanency because doing so will not eliminate the need for the child's removal.

We affirm the termination of the father's parental rights.

**AFFIRMED.**